UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| E.C., A MINOR<br>By his parents and next friends<br>ADALBERTO CATALAN, and<br>PATRICIA CATALAN<br>1829 Phelps Place, NW, #1,<br>Washington, D.C. 20008<br><br>    Plaintiffs<br><br>        v.<br><br>DISTRICT OF COLUMBIA<br>A Municipal Corporation<br>One Judiciary Square<br>441 Fourth Street<br>Washington, D.C. 20001<br><br><br>Serve:<br><br>HON. ANTHONY WILLIAMS, Mayor<br>District of Columbia<br>1350 Pennsylvania Avenue, NW, 5th floor<br>Washington, D.C. 20004<br><br>Serve:<br><br>ROBERT SPANGNLETTI, ESQ.<br>Office of the Attorney General<br>For the District of Columbia<br>1350 Pennsylvania Avenue, NW, Suite 409<br>Washington, D.C. 20004<br><br>        And<br><br>DR. CLIFFORD JANEY<br>In his official capacity as Superintendent<br>of D.C. Public Schools<br>825 North Capitol St., NE, Suite 9026<br>Washington, D.C. 20002<br><br>    Defendants. | Civil Action No: |

1

# **COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE AND OTHER RELIEF**

## **JURISDICTION**

1. This Court has jurisdiction pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1461; the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615; the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; 42 U.S.C. § 1983; 28 U.S.C. § 1331 and 1343. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202. The Court has pendent jurisdiction pursuant to a 5 D.C. Mun. Regs. §§ 3000.1 et seq.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## **PARTIES**

3. Adalberto and Patricia Catalan [hereinafter referred to as "the parents" or "the Plaintiffs"] are the adult parents of Emilio Catalan [hereinafter referred to as "E.C." or "student"] and have been residents of the District of Columbia for all times relevant to the filing of this suit. They bring this action on behalf of her son, E.C., and in her own right.

4. E.C. was born on September 1, 1999 and resides in the District of Columbia with the parents.

5. The District of Columbia is a municipal corporation that receives federal financial assistance and is required to comply with the IDEA, IDEIA, and Section 504.

6. Clifford Janey is the Superintendent of the District of Columbia Public Schools [hereinafter "DCPS"], and as such is responsible for ensuring that all disabled children in the District of Columbia receive a Free Appropriate Public Education [hereinafter "FAPE"] and that their rights to equal protection and due process of law are protected.

2

7.      District of Columbia Public Schools [hereinafter "DCPS"] is the municipal agency charged with providing a FAPE to all disabled children in the District of Columbia.

## FACTUAL ALLEGATIONS

8.      E.C. has attended Tubman Elementary School in the District of Columbia since approximately October 2004. His home school is J.Q. Adams Elementary School. Before enrolling at Tuban, E.C. attended the Rosemont Center also in the District of Columbia.

9.      E.C. is currently classified with multiple disabilities stemming from being other health impaired[1], and developmentally delayed. See Exhibit No. 1. IEP 6/24/04 and notes. According to his most recent Individualized Educational Program [hereinafter "IEP"], E.C. is entitled to receive one hour per week of physical therapy; three forty-five minute sessions per week of speech and language therapy; one hour per week of occupational therapy; one hour per week of vision therapy; and half and hour per week of psychological counseling. Id.[2]

10.     On May 12, 2005, DCPS convened a Multi-Disciplinary Team [hereinafter "MDT"] meeting for E.C.[3] During the MDT meeting, E.C.'s speech and language therapist, Ms. Claudina Barrera, conceded that, although E.C.'s IEP required DCPS to

---

[1] E.C. has been diagnosed with a very rare bleeding condition for which he has been the subject of a study at the National Institutes of Health. See Kaler, Stephen G. Mutation in the leucine-rich repeat C-flanking region of platelet glycoprotein Ib impairs assembly of von Willebrand factor receptor National Institutes of Health, Bethesda, MD 20892.

[2] Emilio's IEP is currently expired. Exhibit No. 1. According to applicable case law, public agencies are to review IEP's at least once at year. Individuals with Disabilities Education Improvement Act (2004) ("IDEIA") Pub. L. No. 108-446 Sec. 101, § 614 (d) (4) (A) (i) (Public agency shall "ensure" that IEP is reviewed at least annually); 34 C.F.R. § 300.343 (c) (1); and D.C. Mun. Regs. tit. 5 § 3008.1.

[3] Although the MDT meeting on May 12, 2005 was convened supposedly to conduct the annual review of E.C.'s IEP, a revised IEP was not developed. An administrative due process hearing is currently pending on that issue.

3

provide him with three forty-five minute speech and language therapy sessions per week, her schedule for the 2004-05 school year had only permitted her to visit Tubman twice a week to provide E.C. with his speech and language therapy. <u>See</u> <u>Exhibit No. 2. Notes from 5/12/05 MDT meeting</u>. Ms. Barrera also stated during the May 12, 2005 MDT meeting that on many occasions, the therapy sessions had to be stopped prematurely because after about twenty minutes, E.C. had become too tired to continue with the session. Ms. Barrera went on to state at the meeting that she felt that it would be appropriate to cut E.C's level of speech and language therapy in light of his becoming easily tired. <u>Id</u>.

11. In response to Ms. Barrera's statements during the May 12, 2005 MDT meeting, the parent and her advocate suggested that instead of cutting the amount of speech and language therapy that the level of speech and language therapy remain the same but that it be broken up into perhaps four shorter sessions per week. <u>Id.</u> The parent and advocate also requested compensatory education from the DCPS-members of the team for DCPS's failure to appropriately provide the three forty-five minute speech and language sessions per week. <u>Id.</u> The DCPS-members of the team, however, declined this request. <u>Id</u>. Although the DCPS-members of the team offered the parent a compensatory education for missed services, that plan was limited only to services missed as a result of a five week hospitalization that Emilio recently had. <u>Id</u>.

12. On May 13, 2005, the parents, through counsel, filed a Due Process Hearing Request against DCPS for failing to appropriately provide E.C. with the three forty-five minute speech and language sessions per week that were called for in his IEP dated June 24, 2004 <u>See</u> <u>Exhibit No. 3. Due Process Hearing Request 5/13/05</u>.

4

13.     On June 13, 2005, parent's counsel received a disclosure packet, from the DCPS Office of the General Counsel, identifying the potential witnesses and documents that DCPS intended to present as evidence at the hearing that was scheduled for June 20, 3005. See Exhibit No. 4. DCPS Disclosure Cover Letter 6/13/05. The packet from DCPS identified seven potential witnesses and no documents. Id.

14.     Also on June 13, 2005, the parents, through counsel, submitted a disclosure packet to the DCPS Office of the General Counsel identifying the potential witnesses and documents that they intended to present as evidence at the Due Process Hearing. See Exhibit No. 5. Parents' Disclosure Cover Letter 6/13/05. The packet also included copies of the documents identified.

15.     On June 20, 2005, E.C.'s mother, an educational advocate, and attorney appeared before Impartial Hearing Officer Terry Michael Banks, Esq., for the Due Process Hearing that had been scheduled pursuant to the Hearing Request filed on May 13, 2005.

16.     At the June 20, 2005 hearing, Counsel for DCPS argued that DCPS had provided E.C. with three speech and language therapy sessions per week as required by the IEP but that two of those sessions were provided on the same day of the week as opposed to on separate days. DCPS went on to argue that having two of the sessions on the same day was not a violation of the student's rights as the IEP in question did not specify that the three forty-five minute speech and language sessions had to be provided on separate days.

17.     In support of their position, DCPS presented the testimony of E.C.'s speech and language therapist, Ms. Barrera. Ms. Barrera testified that the IEP, as she read it, did not require the sessions on separate days and that she consistently provided speech and language therapy to E.C., but that she did not always provide all the hours called for by

5

his IEP because at times he would become very tired and could not effectively continue with the therapy and that on those occasions, she took it upon herself to stop the therapy. She went on to testify that for those reasons she had requested the rest of the team at the May 12, 2005 MDT meeting to lower the amount of therapy hours provided per week.

18.     During cross-examination, Ms. Barrera testified that she did not simply provide the three speech and language sessions on separate days of the week because her schedule did not permit her to be at Tubman more than two days a week.  Ms. Barrera also testified that the two sessions that were provided on the same day of the week were provided back-to-back in the morning with apparently little if any break, as opposed to morning and afternoon with a break, because her schedule did not allow for her to provide the sessions any other way.  She conceded that she did not request that an MDT meeting be convened to address her scheduling and that she did not share the information about E.C. becoming too tired to finish his therapy with anyone else from DCPS until the May 12, 2005 MDT meeting.  When asked if she was present at the meeting when the June 24, 2004 IEP was developed, Ms. Barrera stated that she had not been present and therefore had no first hand knowledge as to whether the team that developed the June 24, 2004 IEP intended for the three forty-five minute sessions to be provided on the same days during the week.

19.     After DCPS presented its case, the student's mother, Ms. Patricia Catalan, testified.  Ms. Catalan stated that she was present at the MDT meeting on June 24, 2004, when the IEP was developed and that her understanding of what was discussed that day was that the three speech and language sessions were to be provided on separate days.

6

20.    During the hearing, the parties and the hearing officer agreed to allow the record to remain open so that DCPS could submit speech and language encounter tracker forms, which are essentially logs of every speech and language session that was provided while E.C. was at Tubman. The hearing officer also allowed the parties the opportunity to submit written comments in response to the encounter tracker forms.

21.    On June 24, 2005, parents' counsel received DCPS's post-hearing submission, which consisted of: a Bilingual Speech and Language Evaluation Report dated October 29, 2002, Exhibit No. 6; a Bilingual Speech and Language Re-evaluation dated December 17, 2004, Exhibit No. 7; a second Bilingual Speech and Language Reevaluation also dated December 17, 2004, Exhibit No. 8; a District of Columbia Public Schools Speech and Language Progress Report dated February 14, 2005, Exhibit No. 9; a District of Columbia Public Schools Speech and Language Final Progress Report dated June 2005 Exhibit No. 10; and District of Columbia Public Schools Encounter Tracker Forms from November 2004 through June 2005. Exhibit No. 11.

22.    On June 27 2005, the parent, through counsel, submitted a written response to the documents that DCPS had submitted on June 24, 2005. Exhibit No. 12.[4]

23.    On August 1, 2005, the HOD from the June 20, 2005 hearing was issued. See Exhibit No. 13. In the HOD, the hearing officer dismissed the parent's claims with prejudice. In the findings, the hearing officer concluded:

---

[4] In that response, the parents reasserted that the three forty-five minute speech and language sessions per week listed on the IEP were intended to be provided on three separate days and that even if the doubled-up sessions were deemed appropriate, DCPS still did not provide the proper total amount of speech and language therapy that E.C. should have received while he was at Tubamn. The parents' response included written calculations, based on the tracker forms, showing that E.C. should have received a total of 47..25 hours of speech and language therapy for the entire time that he was at Tubman that school year, but that instead DCPS only provided him with 28.5 hours of speech and language therapy. Exhibit No. 11.

7

> The record reveals that Ms. Berrera [sic] provided Petitioner speech services on a consistent basis from the time Petitioner arrived at Tubman until the end of the school year. [. . . .]
>
> The hearing officer concludes that Ms. Berrera's [sic] unilateral modification of Petitioner's speech and language services did not deprive Petitioner of a free appropriate public education ("FAPE"). First, the February progress report and Ms. Berrera's [sic] testimony reveal that the Petitioner made progress on or achieved all but one of his goals for the 2004-2005 school year. Second, Ms. Berrera [sic] provided services on a consistent basis form November 4, 2004 to the end of the 2004-2005 school year. Some of the time Petitioner missed was due to his absence, some was due to school closures due to inclement weather, and some was due to Ms. Berrera's [sic] unavailability. However, the encounter tracking forms reveal that Petitioner received services on a consistent basis from the time he entered Tubman. Third, Ms. Barrera found that Petitioner typically tired after twenty minutes of therapy. The hearing officer believes that it would be unreasonable to require a service provider to continue a session when, in his or her professional opinion, the session has reached the point of diminishing returns. Therefore, the hearing officer does not conclude that Ms. Barrera's decision to terminate sessions short of forty-five minutes prescribed in petitioner's IEP constituted a deprivation of FAPE. Third, the hearing officer does not conclude that twice daily sessions deprived Petitioner of FAPE. Again, the hearing officer is persuaded that Petitioner received services on a regular basis from the time he entered Tubam, derived educational benefit, and made progress. Thus, in Petitioner's case, there is nothing in the record to suggest that twice daily sessions are inherently inferior to sessions on separate days.

Id.

**COUNT I. DISTRICT OF COLUMBIA PUBLIC SCHOOLS DENIED THE STUDENT A FREE APPROPRIATE PUBLIC EDUCATION BY FAILING TO PROVIDE THE STUDENT WITH APPROPRIATE SPEECH AND LANGUAGE THERAPY AS CALLED FOR BY THE STUDENT'S INDIVIDUALIZED EDUCATIONAL PROGRAM DATED JUNE 24, 2004.**

24.     The Plaintiff re-alleges paragraphs 1-23.

25.     That the June 24, 2005 IEP required DCPS to provide E.C. with three forty-five minute sessions of speech and language therapy per week on separate days. Exhibit No. 1.

26.     That for the time that E.C. attended Tubman, from November 2004 through June 2005, he should have received a total of approximately 47.25 hours of speech and language therapy taking into account holidays and the student's absences from school.[5]

27.     That the Encounter Tracker Forms for the period from November 1, 2004 through June 23, 2005 reveal that DCPS only provided E.C. with approximately 28.5 hours of speech and language therapy for that period instead of the 47.25 hours that he should have received.[6] Exhibit No. 10.

28.     That the hearing officer's conclusion in the August 1, 2005 HOD that there was no denial of FAPE in part because DCPS consistently provided E.C. with speech and language therapy from November 2004 through June 2005 is an error because the record clearly shows that there is a significant discrepancy between the speech and language therapy that E.C. should have received and the therapy that was actually provided and there E.C. continued to have severe speech and language problems. Exhibit No. 7.

29.     That E.C's IEP intended for the three 45 minute sessions per week to be provided on three separate days during the week, not on the same day. Exhibit No. 1.

---

[5] E.C.'s IEP called for 135 minutes or 2.25 hours of speech and language therapy per week. This means that when totaling up the services, E.C. should have received 47.25 hours of speech and language therapy for approximately 21 weeks that E.C. was in school [32 weeks from November 2004 until June 23, 2005 minus weeks for holidays and absences [2.25 hrs/wk multiplied by 21 wks]].

[6] The tracker forms reveal that for the entire school year, Ms. Barrera provided Emilio with a total of 28.5 hours of speech and language therapy. [the parent disputes approximately three hours of sessions on 12/9/04; 12/17/04; 1/18/05; and 1/25/05 as these sessions consisted of "assessment time", not therapy, or consisted of so called "co-sessions" with the physical therapist]

30.     That DCPS did not provide the three forty-five sessions of speech and language on three separate days during the week, but instead provided one session on one day and the two others back-to-back on the same day, which the parents now asserts was inappropriate and caused harm to E.C.

31.     That E.C.'s mother was present when the June 24, 2004 IEP was developed and based on her participation in the development of the IEP, she believes that the IEP intended for E.C. to receive his three weekly sessions of speech and language therapy on three separate days.

32.     That E.C.' speech and language therapist was not present at the development of the June 24, 2004 IEP and that as such she had no direct knowledge as to whether the IEP permitted that more than one of the speech and language therapy sessions be provided on the same day.

33.     That the decision to provide two of the sessions back-to-back on the same day was not made by a properly convened educational team or based on the student's actual needs but instead was decided summarily by the speech and language therapist based on her scheduling needs.

34.     That E.C. experienced harm as a result of DCPS providing two of the speech and language sessions back-to-back on the same day in that he regularly tired after only about twenty minutes of speech and language therapy causing the sessions to be terminated and that this harm is evident in DCPS's own speech and language reports which characterize his speech and language problems as "severe."  Exhibit Nos. 7-10.

35.     That the hearing officer's conclusion in the August 1, 2005 HOD that "that Ms. Barrera's unilateral modification of Petitioner's speech and language services did not

deprive Petitioner of a free appropriate public education ("FAPE")" is inappropriate and an error.

36.     That the hearing officer's conclusion in the August 1, 2005 HOD that "there is nothing in the record to suggest that twice daily sessions are inherently inferior to sessions on separate days" contradicts the hearing officer's own findings earlier in the HOD stating:

> Ms. Barrera found that Petitioner typically tired after twenty minutes of therapy. The hearing officer believes that it would be unreasonable to require a service provider to continue a session when, in his or her professional opinion, the session has reached the point of diminishing returns. Therefore, the hearing officer does not conclude that Ms. Barrera's decision to terminate sessions short of forty-five minutes prescribed in petitioner's IEP constituted a deprivation of FAPE.

<u>Exhibit No. 12.</u>

37.     That E.C. did not receive appropriate educational benefit from receiving two of the three speech and language therapy sessions back-to-back on the same day of the week and even if this is deemed to be appropriate, E.C. still did not receive all of the speech and language therapy called for by his IEP.

**WHEREFORE**, plaintiffs respectfully request that this Court:

1.     Issue judgment for plaintiffs and against defendants;

2.     Issue appropriate preliminary injunctive relief and/or permanent relief requiring defendants to fund 18.75 hours of private after-school speech and language therapy as compensatory education for the period from November 1, 2004 through June 23, 2005;

3.     Award plaintiffs attorneys' fees and the costs of this action;

4.     Award any other relief the Court deems just.

    Respectfully Submitted,

_____
Tillman Gerald
Bar No. 928796
James E. Brown & Associates, PLLC
1220 L Street, NW, Suite 700
Washington, DC 20005
Counsel for Plaintiffs