**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ALABERTO CALTALAN, et ux,** : <br> **Parents and next friends of E.C., a minor** : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> **DISTRICT OF COLUMBIA, et al.,** : <br> : <br> Defendants. : | Civil Action No. 05-cv-1733(HHK) |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the Plaintiffs, by and through their attorneys Tilman L. Gerald and James E. Brown & Associates, PLLC, and in their Memorandum of Points and Authorities Submitted in Support of Their Motion for Summary Judgment respectfully represent unto this Honorable Court as follows:

**I.     FACTUAL BACKGROUND**

E.C. is a five-year-old student at Tubman Elementary School in the District of Columbia. He has attended Tubman since approximately October 2004. His home school is J.Q. Adams Elementary School. Before enrolling at Tubman, E.C. attended the Rosemont Center also in the District of Columbia.

E.C. is classified as a special education student with multiple disabilities stemming from being other health impaired[1], and developmentally delayed. See Individualized Educational Program ("IEP") 6/24/04; 5/12/05; and 1/12/06. As a special education student, E.C. currently has an Individualized Educational Program ("IEP") through which he is entitled to 22.75 hours per week of specialized instruction; 2.25 hours per week of speech and language therapy; one hour per week of occupational therapy; and one hour per week of physical therapy. IEP 1/12/06.

On May 12, 2005, the District of Columbia Public Schools ("DCPS") convened a multi-disciplinary team ("MDT") meeting to review E.C.'s then current IEP and review his academic progress towards the goals in that IEP. The IEP that was in effect at the time of this meeting, expressly provided, among other things, that E.C. was to receive three forty-five (45) minute sessions of speech and language therapy per week. See IEP 6/24/04. During the MDT meeting on May 12, 2005, Ms. Claudina Barrera, the DCPS-speech and language therapist assigned to provide speech therapy to E.C., conceded that, although E.C.'s IEP required DCPS to provide him with three forty-five minute speech and language therapy sessions per week, her schedule for the 2004-05 school year had only permitted her to visit Tubman twice a week to provide E.C. with his speech and language therapy. Notes from 5/12/05 MDT meeting. Ms. Barrera also stated during the May 12, 2005 MDT meeting that on many occasions, the therapy sessions had to be stopped prematurely because after about twenty minutes E.C. had become too tired to continue with the session. Id. Ms. Barrera went on to state, at the meeting, that she felt it would be appropriate to cut E.C's level of speech and language therapy in light of him becoming easily

---

[1] E.C. has been diagnosed with a very rare bleeding condition for which he has been the subject of a study at the National Institutes of Health. See Kaler, Stephen G. Mutation in the leucine-rich repeat C-flanking region of platelet glycoprotein Ib impairs assembly of von Willebrand factor receptor  National Institutes of Health, Bethesda, MD 20892.

2

tired. Id.

In response to Ms. Barrera's statements during the May 12, 2005 MDT meeting, the parent and her advocate suggested that instead of cutting the amount of speech and language therapy that the level of speech and language therapy remain the same but that it be broken up into perhaps four shorter sessions per week. Id. The parent and advocate also requested compensatory education from the DCPS-members of the team for DCPS's failure to appropriately provide the three forty-five minute speech and language sessions per week. Id. The DCPS-members of the team, however, rejected this request. Id. Although the DCPS-members of the team offered the parent compensatory education for missed speech and language therapy, that plan was limited only to services missed as a result of a five week hospitalization that E.C. recently had. Id.

On May 13, 2005, the parents, through counsel, filed a Due Process Hearing Request against DCPS for failing to appropriately provide E.C. with the three forty-five minute speech and language sessions per week that were called for in his IEP dated June 24, 2004 Due Process Hearing Request 5/13/05.

On June 13, 2005, parent's counsel received a disclosure packet, from the DCPS Office of the General Counsel, identifying the potential witnesses and documents that DCPS intended to present as evidence at the hearing that was scheduled for June 20, 3005. DCPS Disclosure Cover Letter 6/13/05. The packet from DCPS identified seven potential witnesses and no documents. Id. Also on June 13, 2005, the parents, through counsel, submitted a disclosure packet to the DCPS Office of the General Counsel identifying the potential witnesses and documents that they intended

3

to present as evidence at the Due Process Hearing. Parents' Disclosure Cover Letter 6/13/05. The packet also included copies of the documents identified.

On June 20, 2005, E.C.'s mother, an educational advocate, and attorney appeared before Impartial Hearing Officer Terry Michael Banks, Esq. for the Due Process Hearing that had been scheduled pursuant to the Hearing Request filed on May 13, 2005. At the June 20, 2005 hearing, Counsel for DCPS argued that DCPS had provided E.C. with three speech and language therapy sessions per week as required by the IEP. Transcript of Due Process Hearing 6/20/06. DCPS went on to argue that two of the sessions provided were on the same day, but that this was not a violation of the student's rights because the IEP in question did not specify that the three forty-five minute speech and language sessions had to be provided on separate days. Id. at 59.

In support of their position, DCPS presented the testimony of E.C.'s speech and language therapist, Ms. Claudina Barrera. Id at 20-43. Ms. Barrera testified that she provided E.C. speech and language therapy during three forty-five minute sessions per week for a total of 135 minutes per week. Id at 24. However, during cross-examination, Ms. Barrera testified that she was only at the school two days a week, but that she provided the three separate sessions by providing two of those sessions on the same day in the mornings and that on occasion, the sessions could not be completed because E.C. would become tired after a short time. Id at 30-32 and 60-61. When asked how this complied with the IEP that required three speech therapy sessions per week, Ms. Barrera testified that the IEP specified three sessions per week but not specifically on three separate days. Id at 30. Ms. Barrera went on to testify that she was not involved in the development of the June 24, 2004 IEP and that she did not know if the team that developed that IEP meant for the three speech and language therapy sessions to be provided on three separate days or whether those sessions could take place on

the same day. Id at 32. When asked why she could not simply go to the school on a third day during the week to provide E.C. with the third speech and language session, Ms. Barrera testified that she had other responsibilities on the other days during the week. Id at 33.

When asked, during the hearing, if she had any documents to prove that she was indeed providing E.C. with 135 minutes of speech and language therapy per week, Ms. Barrera testified that she had "Medicaid forms."[2] The hearing officer presiding at the hearing then allowed DCPS additional days after the hearing to submit the Medicaid forms showing that E.C. had been provided with 135 minutes of speech and language therapy per week. The hearing officer also allowed the parties additional time to review the forms and provide a written response for the record.

After Ms. Barrera's testimony, the student's mother, Ms. Patricia Catalan, testified. Id. 43-50. Ms. Catalan stated that she was present at the MDT meeting on June 24, 2004, when the IEP was developed and that her understanding of what was discussed that day was that the three speech and language sessions were to be provided on separate days. Id. at 46.

During the hearing, the parties and the hearing officer agreed to allow the record to remain open so that DCPS could submit the speech and language "Medicaid forms" that Ms. Barrera testified would show that she indeed provided E.C. with 135 minutes of speech and language therapy per week. Id. at 40, and 70-71. The hearing officer also allowed the record to remain open to allow the parties to submit written comments in response to the encounter tracker forms.

On June 24, 2005, parents' counsel received DCPS's post-hearing submission, which consisted of: a Bilingual Speech and Language Evaluation Report dated October 29, 2002; a Bilingual

---

[2] Medicaid forms, which are also known as "encounter tracker forms", are essentially service logs indicating the dates on which speech and language therapy was provided, the amount of time that the therapy was provided and the specific area on which the therapy focused for that particular session.

Speech and Language Re-evaluation dated December 17, 2004; a second Bilingual Speech and Language Reevaluation also dated December 17, 2004; a District of Columbia Public Schools Speech and Language Progress Report dated February 14, 2005; a District of Columbia Public Schools Speech and Language Final Progress Report dated June 2005; and District of Columbia Public Schools Encounter Tracker Forms from November 2004 through June 2005.

On June 27, 2005, the parent, through counsel, submitted a written response to the documents that DCPS submitted on June 24, 2005.[3]

On August 1, 2005, the Hearing Officer's Determination ("HOD") from the June 20, 2005 hearing, was issued. In the HOD, the hearing officer dismissed the parent's claims with prejudice. In the findings, the hearing officer concluded:

> The record reveals that Ms. Berrera [sic] provided Petitioner speech services on a consistent basis from the time Petitioner arrived at Tubman until the end of the school year. [. . . .]
>
> The hearing officer concludes that Ms. Berrera's [sic] unilateral modification of Petitioner's speech and language services did not deprive Petitioner of a free appropriate public education ("FAPE"). First, the February progress report and Ms. Berrera's [sic] testimony reveal that the Petitioner made progress on or achieved all but one of his goals for the 2004-2005 school year. Second, Ms. Berrera [sic] provided services on a consistent basis form November 4, 2004 to the end of the 2004-2005 school year. Some of the time Petitioner missed was due to his absence, some was due to school closures due to inclement weather, and some was due to Ms. Berrera's [sic] unavailability. However, the encounter tracking forms reveal that Petitioner received services on a consistent basis from the time he

---

[3] In that response, the parents reasserted that the three forty-five minute speech and language sessions per week listed on the IEP were intended to be provided on three separate days and that even if the doubled-up sessions were deemed appropriate, DCPS still did not provide the proper total amount of speech and language therapy that E.C. should have received while he was at Tubamn. The parents' response included written calculations, based on the tracker forms, showing that E.C. should have received a total of 47..25 hours of speech and language therapy for the entire time that he was at Tubman that school year, but that instead DCPS only provided him with 28.5 hours of speech and language therapy. Exhibit No. 11.

> entered Tubman. Third, Ms. Barrera found that Petitioner typically tired after twenty minutes of therapy. The hearing officer believes that it would be unreasonable to require a service provider to continue a session when, in his or her professional opinion, the session has reached the point of diminishing returns. Therefore, the hearing officer does not conclude that Ms. Barrera's decision to terminate sessions short of forty-five minutes prescribed in petitioner's IEP constituted a deprivation of FAPE. Fourth, the hearing officer does not conclude that twice daily sessions deprived Petitioner of FAPE. Again, the hearing officer is persuaded that Petitioner received services on a regular basis from the time he entered Tubman, derived educational benefit, and made progress. Thus, in Petitioner's case, there is nothing in the record to suggest that twice daily sessions are inherently inferior to sessions on separate days.

HOD 8/1/05.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party is entitled to judgment as a matter of law and no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)*; Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. There is no genuine issue of material fact where the relevant evidence in the record, taken as a whole, indicates that a reasonable fact finder could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Facts and inferences drawn from those facts must be viewed in the light

most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, summary judgment may still be granted if evidence favoring the non-moving party is merely colorable, or is not significantly probative. *Anderson*, 477 U.S. at 249-50.

Once the movant files a proper summary judgment motion, the burden shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 250. For a non-moving party to establish that a genuine issue for trial exists, it must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co.* 475 U.S. at 586.

    **A.    STANDARD OF REVIEW OF ADMINISTRATIVE DECISIONS UNDER IDEA**

In reviewing administrative decisions under the IDEA, the courts will review the administrative record, hear additional evidence upon the request of the parties, and thereafter make a decision based on the preponderance of the evidence. See 20 U.S.C. §1415(e)(2)(B). In its review of cases brought under §1415(e)(2), "...a court's inquiry... is twofold. First, has the State complied with the procedures set forth in the Act. And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more..." See *Bd. of Educ. Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, at 206 (1982).

The court has broad discretion to grant appropriate relief under the IDEA. See *Sch. Comm. of Burlington v. Mass. Dept. Of Educ.,* 471 U.S. 359, at 369(1985). The standard of review under IDEA, however, is less deferential than that used in the traditional evidence standard required in the review of ordinary administrative cases. See *Kerkham v. McKenzie,* 862 F.2d 884, at 887 (D.C. Cir. 1988); *Kroot v. D.C.,* 800 F. Supp. 976, at 981 (D.D.C. 1992). In conducting its review, the court, in applying the "preponderance of evidence" standard enunciated in 20 U.S.C. 1415(i)(2)(B)(iii), should not "substitute its own notions of sound educational policy for those of the school authorities which they review". See *Rowley, supra.* at 206-207.

The party challenging the hearing officer's decision has the burden of persuading the court that the hearing officer was incorrect. See *Angevine v. Smith,* 959 F.2d 292, at 295; *Kerkham, supra. id.; Lyons v. Smith,* 829 F. Supp. 414, at 417, (D.D.C. 1993). The reviewing court must give "due weight" to the administrative proceedings, but its decision ultimately should be independent, one predicated and based upon a preponderance of the evidence. See *Rowley, id.*.

### III. ARGUMENT

#### A. THE HEARING OFFICER'S DETERMINATION OF AUGUST 1, 2005 MUST BE REVERSED

The facts in the case at bar are in the main uncontroverted. Firstly, E.C., at the time this matter began to unfold, was five (5) years old and was a student at the Tubman Elementary School where he had been enrolled since the end of October 2004. He had previously attended the Rosemont School. E.C. had been qualified to

receive special education services and benefits under IDEA due to him being multiple disabled with a developmental delay and other health impairment. In an Individualized Educational Program (hereinafter referred to as "IEP") at the Multi-Disciplinary Team (hereinafter referred to as "MDT") meeting held on June 24, 2004, the MDT team outlined the special education services that would be beneficial to E.C. during the 2004-2005 school year given the nature of his disabilities. Speech/Language therapy was among the special education services the MDT outlined for E.C in the IEP and provided speech/language therapy, at forty-five (45) minute intervals three times weekly.

On November 4, 2004, Ms. Claudina Barrera, a Speech and Language pathologist employed by DCPS, began providing speech/language therapy to E.C. Ms. Barrera was assigned to Tubman Elementary School two days a week, on Tuesdays and Thursdays before 12:00 p.m. She was also assigned to Meyer Elementary School and conducted testing the other three days of the week. On November 4, 2004, she provided speech/language therapy to E.C. in a group setting (three students) for thirty (30) minutes. (Admin. Record @ 85).

At the next session, on November 16, 2004, a group session of three students(3), Ms. Barrera provided therapy to E.C. for ninety (90) minutes. (Admin. Record @ 86). On November 18, 2004, the session was once again a group session of three students that lasted forty-five (45) minutes. The last two therapy sessions provided by Ms. Berrera on November 23 and 30, 2004, were group sessions the duration of which were seventy-five (75) minutes and ninety (90) minutes

respectively. From November 30, 2004 up to and including June 23, 2005, E.C. received speech/language therapy in groups sessions eighteen times. (Admin. Record 88-104).

The question presented before the court is whether the special education services that were specified under the IEP developed for E.C. on June 24, 2004 for the 2004-2005 school year, were delivered in such a manner as to benefit E.C. educationally. Plaintiffs verily submit that the answer is a resounding "no" and that the speech/language therapy services fell far short both in quality and duration given the directives the MDT team established in the IEP. The hearing officer erred in concluding that Ms. Barrera's "unilateral modification" of E.C.'s speech/language services did not deprive him of a free appropriate public education. To support his faulty conclusions, the hearing officer points to the February progress report prepared by Ms. Barrera which shows that E.C. had made progress on or achieved all but one of his goals for the 2004-2005 school year. (See Admin. Record 4, 84).

What is interesting is that in the February progress report Ms. Barrera comments that E.C., typically tires 20 minutes after initiating a therapy session, indicates that he is tired, yet the encounter tracker forms for the months leading up to February 14, 2005 do not evince any session less than thirty minutes. (See Admin Record 84-94). Query, do the duration of the sessions noted on the encounter tracking forms indicate that she continued the therapy sessions even though E.C. indicated that he was tired? If she continued the therapy sessions after 20 minutes, "the point of diminishing returns", according to the a hearing officer, what services

11

were provided for the remainder of the time noted on the tracking forms? The problem here is that the record does not support the findings made nor the conclusions reached by the hearing officer.

Ms. Barrera's credibility is severely and irreparably tarnished by the time reported on the trackingr forms and cannot be reasonably rehabilitated in view of the progress report she submitted in February. The February progress report, at best, is self serving and provides no justification for the ill-advised modification of E.C.'s speech/language services. The decision to unilaterally modify the speech/language services constituted a deprivation of free appropriate public education and an impermissible and radical departure from the IEP developed for E.C. by the MDT. Neither Ms. Barrera, DCPS nor the hearing officer can unilaterally modify the services that are to provided under the specifications of services deliverable under a student's IEP without involvement of and input from the MDT team. The IDEA does not vest any single person or entity, including hearing officers with discretion to modify any provision of an IEP. "...The heart of the IDEA is the IEP. The IEP has been the "primary vehicle" and "centerpiece of the statute education delivery system". See *Diatta v. District of Columbia*, 319 F. Supp.2d. 57, at 63 (D.D.C. 2004) citing with approval *Honig v. John Doe,* 484 U.S. 305. at 311. The very notion that the hearing officer is attempting to sanction a modification of the delivery of services absent the inclusion of the MDT team is repugnant to and offends the procedural safeguards established within the IDEA to protect the rights of E.C. and his parents.

TO WIT, the free appropriate public education requirement under the IDEA is tailored to the unique needs of the student by means of an IEP. In this case, the speech/language therapist deviated from the IEP tailored to the specific needs of E.C. for reasons related solely to her convenience and her admittedly tight work schedule (See SMF 12). Therefore, under *Rowley, supra,* although it appears that the Defendant passes the fist prong of the two tier test, as it has complied with procedural requirements of the IDEA, it, however, fails the second prong. Simply stated, the IEP developed on June 24, 2004, while reasonably calculated to enable E.C. to receive educational benefits and to achieve the goals established by the members of the MDT, was not implemented as contemplated. The IEP developed for E.C. on June 24, 2004, provided for personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction. See *Reid v. District of Columbia*, 401 F.3d 516, at 519 (D.D. Cir. 2005).

Consequently, E.C., not only did not have the benefit of the services prescribed in the IEP on a quantitative basis, eg., but E.C. did not receive the hours he was entitled to receive according to his IEP, nor did he receive the benefit contemplated on a qualitative basis as the therapy sessions he received were frequently group sessions of two or more rather than the individualized sessions envisioned given the nature and extent of his severely delayed speech and language skills. It is undisputed that Ms. Barrera was not a member of the MDT team that developed the June 24, 2004 IEP for E.C. nor did she indicate that she made a reasonable effort to discern from the MDT team the manner in which the

speech/language services were to have been delivered.(See SMF 11,17). The record incontrovertibly shows that Ms. Barrera did not provide E.C. the services that the IEP mandated that he should have received for the period November 4, 2005 to June 23, 2005, excluding a period of hospitalization.

Quite clearly the decision to provide three therapy sessions within the span of a two day period limited to the morning hours, and frequently provided in group sessions of two or more, could not reasonably have been calculated to provide any educational benefit to E.C. Moreover, such a schedule would be of no particular benefit to E.C. if he "typically tires after 20 minutes into a session. The second session would certainly be unproductive given his behavior propensities described by Ms. Barrera in her February progress reimbursement report.

## **CONCLUSION**

WHEREFORE, upon the above stated argument, Plaintiffs respectfully request that this honorable Court find that record preponderates in their favor and find that the hearing officer erred as a matter when he held that the unilateral modification of the therapy session specified IEP did not constitute a denial or deprivation of FAPE as defined under the IDEA, grant Motion for Summary Judgment in favor of the Plaintiffs, reverse the Hearing Officer's Determination of August 1, 2005, enter

judgment against the Defendants, and award Plaintiffs reasonable attorneys' fees and costs incurred in this matter.

                                            Respectfully Submitted,

/s/_____
Tilman L. Gerald, Esq.
Unified Bar No. 28796
James E. Brown & Associates, PLLC
1220 L Street, NW, Suite 700
 Washington, D.C. 20005
(202)742-2000

***Attorneys for Plaintiffs***