UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| ALABERTO CATALAN et ux., <br> Parents and next friends of E.C., a minor, | ) |
|      Plaintiffs, | ) |
|         v. | )      Case Number 05-1733 (HHK) |
| DISTRICT OF COLUMBIA, et al., | ) |
|      Defendants. | ) |

_____

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT

Come now defendants District of Columbia and Clifford Janey, by and through counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and hereby respectfully move this honorable Court to grant summary judgment in their favor in the captioned action and to deny the plaintiffs' motion for summary judgment.  As established by the accompanying supporting memorandum and the statement of material facts as to which there is no genuine dispute, the challenged administrative determinations under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400 *et seq.* were entirely appropriate.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General for the District of Columbia

/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor North
Washington, DC 20001
(202) 442-9842
FAX  -  (202) 727-3625

July 10, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

 ALBERTO CATALAN <u>et ux</u>.,                    )
Parents and next friends of E.C., a
minor,
            Plaintiffs,                          )

                    v.                           )        Case Number 05-1733 (HHK)

DISTRICT OF COLUMBIA <u>et al.</u>,              )

            Defendants.                          )
_____

**<u>DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' CROSS
MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>**

**<u>INTRODUCTION</u>**

This action seeks review of an administrative decision by a Hearing Officer,

issued on August 1, 2005, following a hearing conducted pursuant to the Individuals

With Disabilities Education Act, 20 U.S.C. § 1400 *et seq*. ("IDEA"), on June 20, 2005.

At the hearing the plaintiffs sought to establish that the District of Columbia Public

Schools ("DCPS") denied the minor plaintiff a Free Appropriate Public Education

("FAPE") because DCPS provided the student with speech and language therapy in three

sessions twice a week instead of three sessions during three days a week.  In the

challenged ruling, the Hearing Officer denied the parents' request for relief and dismissed

the case.  (R. at 5)

## FACTUAL BACKGROUND

The minor plaintiff is a six year old special education student with multiple disabilities.  (R. at 44) On June 24, 2004, DCPS convened a Multidisciplinary Team ("MDT") meeting to complete and finalize the student's Individualized Education Program ("IEP") annual review.  (R. at 57)  The IEP team included the student's parents and special education advocate, as well as appropriate DCPS personnel.  (R. at 44, 57) Following a discussion of the student's needs the IEP team recommended, *inter alia,* that the student receive 3 weekly sessions of speech and language therapy to last 45 minutes per session, and 1 hour per week of occupational therapy.  (R. at 44, 60) Other than weekly, the IEP did not specify the number of days over which the sessions were to be conducted.  The student did not enroll at Tubman Elementary School, where the therapy was to be provided, until the end of October, 2004. (Pls.' Mot. at 9) The school speech and language therapist, Ms. Claudina Barrera, began providing speech and language services on November 4, 2004, ending on June 16, 2005.  Ms. Barrera provided the services in three sessions on two days a week.

## ARGUMENT

### 1.    The criteria for granting summary judgment

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Material facts are those "that might affect the outcome of the suit under the governing law." Farmland Industries, Inc. v. Grain Board of

4

Iraq, 248 U.S. App. D.C.  276, 904 F. 2d 732, 735 (1990)(citing <u>Anderson v. Liberty</u>

<u>Lobby, Inc.,</u> 477 U.S. 242, 248 (1986)).[1]

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . .
> against a party who fails to make a showing sufficient to establish the existence of
> an element essential to that party's case, and on which that party will bear the
> burden of proof.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).[2]

To meet the initial burden of showing "the absence of a genuine issue of material

fact" on an essential element of the non-movant's case, the movant may demonstrate that

the respondent has no evidence to support an essential element of his or her case.  <u>Street</u>

<u>v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479 (6th Cir. 1989).  In answer, the respondent

must "present affirmative evidence" in order to defeat the motion, and "[w]here the

record taken as a whole could not lead a rational trier of fact to find" for the respondent,

the motion for summary judgment should be granted.  <u>Id</u>.

---

[1] <u>Anderson v. Liberty Lobby, Inc</u>, <u>supra</u>, 477 U.S. at 248, similarly describes the rule for
determining materiality:

> As to materiality, the substantive law will identify which facts are material. Only disputes over
> facts that might affect the outcome of the suit under governing law will properly preclude the entry of
> summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. . . Any proof or
> evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality
> is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and
> not a criterion for evaluating the evidentiary underpinning of those disputes.

[2] <u>Celotex Corp. v. Cantrett</u>, <u>supra</u>, is one of three cases decided by the U.S. Supreme Court in 1986 that
govern the standard for granting motions for summary judgment.  <u>Celotex Corp.</u>, <u>supra</u>;  <u>Anderson v.</u>
<u>Liberty Lobby, Inc.,</u> 477 U.S. 242 (1986); <u>Matsushita Electric Industrial Company v. Zenith Radio</u>
<u>Corporation</u>, 475 U.S. 574 (1986). <u>Celotex Corp.</u> held that Rule 56 was to be administered with due regard
to those opposing claims, as well as those advancing them, and that the purpose of the Rule was to dispose
of claims that had no reasonable factual basis. 477 U.S. at 327, 323. <u>Anderson</u> held that the determination
of whether a given factual dispute requires submission to a jury must be guided by the substantive
evidentiary standards that apply to the case. 477 U.S. at 248, 254.  <u>Matsushita</u> held that where the record
taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine
issue for trial." 475 U.S. at 587.

> . . . [T]aken together, these three cases signal to the lower courts that summary judgment
> can be relied upon more so than in the past to weed out frivolous lawsuits and avoid
> wasteful trials and lower courts have responded accordingly.

10 A. Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2727, n. 25 (1998).

**2.  The criteria for review of administrative decisions under IDEA**

IDEA provides for judicial review in state or federal court to "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing.  20 U.S.C. §1415(c).  In conducting such review, the reviewing court "shall receive the records of the administrative proceeding, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. §1415(e).  However, the "preponderance of the evidence" standard "is by no means an invitation to the court to substitute their own notions of sound educational policy for those of the school authorities which they review."  Board of Education of Hendrick Hudson Central School Dist. v. Rowley, 458 U.S. 176, 206 (1982).

The party challenging the hearing officer's determination bears the burden of persuading the court that the Hearing Officer was incorrect.  Angevine v. Smith, 959 F.2d 292, 295 (D.C. Cir. 1992); Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988); Lyons v. Smith, 829 F.Supp. 414, 417 (D.D.C. 1993).  While the Court is authorized to make an independent determination, the Court "must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education."  Lyons v. Smith, *supra*, 829 F.Supp. at 418.

Accordingly, before this Court may reverse the Hearing Officer's decision, the Plaintiffs must show by a "preponderance of the evidence," giving the Hearing Officer's finding "due weight," that the Hearing Officer was wrong.

3.    **Under the Applicable Standards, Dismissal of the Complaint**
         <u>**Herein is Required**</u>

   A.  **The Hearing Officer correctly determined that the student derived
        educational benefit and suffered no educational harm from the
        <u>implementation of his IEP.</u>**

Plaintiffs here assert that the student was denied a FAPE because the speech and
language therapist deviated from the student's IEP.  (Pls' Mot. at 9)  Plaintiffs do not
contest the appropriateness of the student's IEP, but contend that the recommendations in
the IEP were not carried out properly:  "Simply stated, the IEP developed on June 24,
2004, while reasonably calculated to enable E.C. to receive educational benefits and to
achieve the goals established by the members of the MDT, was not implemented as
contemplated."  (Pls.' Mot. at 13)  Plaintiffs assert that the student received the IEP
recommended speech and language therapy twice a week, not three times a week; that
instead of having sessions of 45 minutes in duration, they sometimes only lasted for 20
minutes; that the student did not receive the called-for number of hours of speech and
language therapy; and lastly, plaintiffs contend that there were times that the student
received his speech and language therapy with two other students, rather than on an
individual basis.  (Pls.' Mot. at 10-11)

The Individuals with Disabilities Act ("IDEA"), <u>20 U.S.C. Sections 1400-1482</u>,
guarantees that all children with disabilities have available to them a free appropriate
public education…." The Supreme Court specifically interpreted the meaning of the "free
appropriate public education" requirement in *Board of Education v. Rowley,* 458 U.S.
176 (1982).  The Court emphasized the language of the statute itself in holding that a
state satisfies the requirement by providing "educational instruction specifically designed

to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction…." *Id. at 203.* (Emphasis added)  The Court further stated that there was no "suggestion from the face of the statute that the requirement of an 'appropriate education' was to be limitless…." *Id. at 190.* Indeed, the Court concluded "[t]hat the Act imposes no clear obligation upon recipient States beyond the requirement that handicapped children receive some form of specialized education is perhaps best demonstrated by the fact that Congress, in explaining the need for the Act, equated an 'appropriate education' to the receipt of some specialized educational services." *Id. at 195.*

In the instant case, the student's Individualized Education Plan ("IEP") was developed on June 24, 2004.  The IEP included a number of speech and language goals that the student should achieve during the course of the school year.  These goals were agreed to by the parents.  (R  at 44)  Among the listed goals were the following: "[The student] will use 2 word combinations to communicate; [the student] will use noun + verb qualifier sentences in structured situations to discuss pictures; [the student] will diminish echolalic behavior; [the student] will follow 2 step unrelated directions; [the student] will comprehend descriptive concepts." (R. at 49-50)  A Final Progress Report issued by the student's speech and language pathologist,  Claudina Barrerra, in June, 2005, indicates that the student was either making progress or had successfully completed the majority of the components of the above mentioned goals despite being absent from school for more than six weeks, due to illness.  (R. at 81-82, 85-104)

Additionally, the student's mother testified that her son had "gotten better" in his speech and language skills.  "He can give me complete phrases.  Now he's understanding

a little bit more about the concept of things.  He can follow the directions a little bit more completely.  And I see that he can express things of what he wants a little bit more." (R. at 151-152)  Further, Ms. Barrerra testified that the student had made great progress during the school year.  (R. at 130)

As per the student's IEP, the speech pathologist provided the student with three speech and language sessions on a weekly basis.  (R. at 134)  Ms. Barrerra would typically meet the student on Tuesdays and Thursdays.  On one of those days she would be with the student for 45 minutes on the other day she would meet with the student for 45 minutes, have a break and meet with the student at a later time for another 45 minutes. (R. at 135)   On days when the student was not feeling well the sessions might be cut short.

While plaintiffs claim that the student did not receive all the speech and language therapy hours to which he was entitled, the Hearing Officer took this into account in making his decision.  "Ms. Berrera [sic] provided services on a consistent basis from November 4, 2004 to the end of the 2004-2005 school year.  Some of the time Petitioner missed was due to his absence, some was due to school closures due to inclement weather, and some was due to Ms. Berrera's [sic] unavailability.  However, the encounter tracking forms reveal that Petitioner received services on a consistent basis from the time he entered Tubman." (R. at 4)

Plaintiffs admit that DCPS offered the parent compensatory education for the missed speech and language therapy while the student was hospitalized.  (Pls.' Mot. at 3) Thus, the only issue before the Court is whether the Hearing Officer erred when he concluded that the small number of sessions missed by the student because the therapist

was absent or because the school was closed, and the fact that the student was provided

three speech and language therapy sessions twice a week rather than three times a week,

did not deprive the student of a FAPE.

      Here the evidence in the record supports the HO's conclusion that the student

received consistent services throughout the school year and progressed as a result of

them.  The student received "personalized instruction[ ] provided with sufficient

supportive services to permit [him] to benefit from the instruction….the child []

receiv[ed] a 'free appropriate public education' as defined by the Act." *Rowley* at 189.


                                      Respectfully submitted,
                                      ROBERT J. SPAGNOLETTI,
                                      Attorney General for the District of
                                      Columbia

                                      GEORGE VALENTINE
                                      Deputy Attorney General
                                      Civil Litigation Division

                                      EDWARD P. TAPTICH [012914]
                                      Chief, Equity Section 2


                                        _/s Maria Merkowitz
                                      MARIA MERKOWITZ, [312967]
                                      Assistant Attorney General
                                      Equity Division
                                      441 4th Street, N.W., 6S
                                      Washington, D.C. 20001
                                      (202) 442-9842
                                      Email – maria.merkowitz@dc.gov

July 10, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

 ALBERTO CATALAN et ux.,                )
Parents and next friends of E.C., a
minor,
      Plaintiffs,                                      )

          v.                                         )        Case Number 05-1733 (HHK)

DISTRICT OF COLUMBIA, et al.,            )

      Defendants.                                   )
_____

## DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO DISPUTE

1.      An Individualized Educational Program ("IEP") meeting was conducted on behalf of the student on 6/24/04.  (R. at 44)  The IEP developed on that date was reasonably calculated to enable the student to receive educational benefits and to achieve the goals established by the members of the MDT team.  (Pls' Mot. at 13)

2.      The IEP included a number of speech and language goals that the student was to achieve during the course of the school year including the following: "[The student] will use 2 word combinations to communicate; [the student] will use noun + verb qualifier sentences in structured situations to discuss pictures; [the student] will diminish echolalic behavior; [the student] will follow 2 step unrelated directions; [the student] will comprehend descriptive concepts."  (R. at 49-50)

3.      The IEP provided that the student was to receive three (3) forty- five (45) minute sessions of speech-language therapy weekly.  The IEP did not specify the number of days over which the sessions were to be conducted.  (R. at 44)

4.     The student did not begin classes at Tubman Elementary School until the end of October, 2004.  (Pls. Mot. at 9)

5.     The school speech and language therapist, Ms. Claudina Barrera, began providing speech and language services to the student on November 4, 2004.  (R. at 85)

6.     Ms. Barrera provided the student with three speech and language sessions on a weekly basis.  (R. at 134)

7.     On December 17, 2004, Ms. Barrera conducted a Speech and Language re-evaluation of the student and determined that the student was in need of continued speech and language services.  (R. at 77)

8.     The student received speech and language therapy on Tuesdays and Thursdays until June 16, 2005.  (R. at 104)   On one of those days the speech pathologist would be with the student for 45 minutes; on the other day she would meet with the student for 45 minutes, have a break and meet with the student at a later time for another 45 minutes.  (R. at 135)

9.     A Final Progress Report issued by the speech pathologist in June, 2005, indicates that the student was either making progress or had successfully completed the majority of the components of the speech and language goals set out in his IEP. (R. at 81-82, 85-104)

10.     The student increased his "utterances" from one word to two to four words.  (R. at 129-131)

11.     The student's mother testified that her son had "gotten better" in his speech and language skills.  "He can give me complete phrases.  Now he's understanding a little bit more about the concept of things.  He can follow the directions a little bit more

completely.  And I see that he can express things of what he wants a little bit more."  (R. at 151-152)

12.    The speech pathologist testified that the student had made great progress during the school year.  (R. at 130)

Respectfully submitted,
ROBERT J. SPAGNOLETTI,
Attorney General for the District of Columbia

GEORGE VALENTINE
Deputy Attorney General
Civil Litigation Division

EDWARD P. TAPTICH [012914]
Chief, Equity Section 2

  /s Maria Merkowitz
MARIA MERKOWITZ, [312967]
Assistant Attorney General
Equity Division
441 4th Street, N.W., 6S
Washington, D.C. 20001
(202) 442-9842
Email – maria.merkowitz@dc.gov

July 10, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

 ALBERTO CATALAN <u>et ux</u>.,           )
Parents and next friends of E.C., a
minor,
          Plaintiffs,                          )

                    v.                          )           Case Number 05-1733 (HHK)

DISTRICT OF COLUMBIA <u>et al.</u>,        )

          Defendants.                     )
_____

## <u>DEFENDANT'S STATEMENT OF MATERIAL FACTS WHICH ARE IN DISPUTE</u>

1.  Defendants dispute plaintiffs' material fact numbered 9. The number of students in each session conducted by Ms. Barrerra ranged from 1-4 students.  At no time were there any sessions with four students in addition to the minor plaintiff.  (R. at 85-104)

2.  Defendants dispute plaintiffs' material fact numbered 12.  Ms. Barrerra believed that she could provide the required services in two days a week.  (R. at 137)

3.  Defendants dispute plaintiffs' material fact numbered 17.  Ms. Barrerra testified that "the IEP states three times per week, not three days per week."  (R. at 134)

4.  Defendants dispute plaintiffs' material fact numbered 18.  This material fact is taken from plaintiffs' legal response to records produced by defendants, with the consent of plaintiffs, after the close of oral testimony.  It represents only the attorney's arguments and is not based on any evidence in the record.

14

Respectfully submitted,
ROBERT J. SPAGNOLETTI,
Attorney General for the District of
Columbia

GEORGE VALENTINE
Deputy Attorney General
Civil Litigation Division

EDWARD P. TAPTICH [012914]
Chief, Equity Section 2

_/s Maria Merkowitz
MARIA MERKOWITZ, [312967]
Assistant Attorney General
Equity Division
441 4th Street, N.W., 6S
Washington, D.C. 20001
(202) 442-9842
Email – maria.merkowitz@dc.gov

July 10, 2006