IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ALBERTO CALTALAN et ux,** : | | |
| **Parents and next friends of E.C., a minor** : | | |
| : | | |
| Plaintiffs, : | Civil Action No. 05-1733(HHK) | |
| : | | |
| v. : | | |
| : | | |
| **DISTRICT OF COLUMBIA,** : | | |
| : | | |
| **Defendant** : | | |
| : | | |
| _____ : | | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR RESPONSE TO THE DEFENDANT'S MOTION IN OPPOSITION OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the Plaintiffs, by and through their attorneys Tilman L. Gerald and James E. Brown & Associates, PLLC, and in their Memorandum of Points and Authorities Submitted in Support of Their Response to the Defendant's Opposition of Plaintiff's Motion for Summary Judgment and their Opposition to the Defendant's Cross Motion for Summary Judgment respectfully represent unto this Honorable Court as follows:

**I. STANDARD OF REVIEW**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party is entitled to judgment as a matter of law and no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. There is no genuine issue of material fact where the relevant evidence in the record, taken as a whole, indicates that a reasonable factfinder could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Facts and inferences drawn from those facts must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, summary judgment may still be granted if evidence favoring the non-moving party is merely colorable, or is not significantly probative. *Anderson*, 477 U.S. at 249-50.

Once the movant files a proper summary judgment motion, the burden shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 250. For a non-moving party to establish that a genuine issue for trial exists, it must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co.* 475 U.S. at 586.

## II. ARGUMENT

The Defendant argues that the August 2005 Hearing Officer's Determination should be allowed to stand because the Hearing Officer correctly determined that E.C. derived educational benefit and suffered no harm from the implementation of his Individualized Educational Plan (hereinafter referred to as the "IEP"). This argument lacks vitality as there is no legal basis or any evidence that demonstrates that E.C.'s IEP was not implemented as written as the speech and language therapist "unilaterally modified" the IEP without a MDT meeting. Furthermore, there is no supporting evidence that E.C. made anything more than "trivial" progress. 20 U.S.C. 1400(d) provides that the purpose of the Individuals with Disabilities Education Act is "to ensure that all

children with disabilities have available to them a free and appropriate public education that emphasizes special education and *related services designed to meet their unique needs and prepare them for further education*, employment, and independent living." Encompassed in this notion is that the "educational instruction specifically designed to meet the unique needs of the handicapped child" must "call for more than a trivial educational benefit". See *Board of Education of the Hendrick Hudson Central School District* v. *Rowley*, 458 US 176 (1982); see also *Polk v. Central Susquehanna Intermediate Unit 16*, 1988-89 EHLR 441:130 (3d Cir. 1998). No where in their papers does the Defendant offer a cogent basis for affirming and not reversing the August 2005 HOD. The Defendant only advances the self-serving statements of Ms. Barrera to supports its position. Therefore, based on the foregoing, this Court must deny the Defendant's Cross Motion for Summary Judgment and grant the Plaintiff's Motion for Summary Judgment and reverse the August 2005 Hearing Officer's Determination.

**A.   THE DEFENDANT FAILED TO IMPLEMENT THE IEP AS WRITTEN WHEN THE SPEECH AND LANGUAGE THERAPIST UNILATERALLY MODIFIED E.C.'S IEP**

As argued in the Plaintiff's Motion for Summary Judgment, E.C.'s IEP, as decided by the June 24, 2004 MDT members, indicated that for the 2004-2005 school year, he would receive speech/language therapy, for forty-five (45) minute, three times a week. The Defendant carelessly asserts that E.C. had not been denied access to a free and appropriate education because he received "personalized instruction [] provided with sufficient supportive services to permit [him] to benefit from the instruction. . . .." *See Defendant's Cross Motion for Summary Judgment at 10*. Moreover, the record demonstrates that Ms. Barrera, the speech and language therapist, failed to implement E.C.'s IEP, as she never met with E.C. on a consistent basis for the allotted 135 minutes

a week nor did she implement all of the speech and language goals written in the IEP. *See A.R. 49-51; 84-104.*

Here, despite the IEP requiring E.C. to receive 135 minutes a week, Ms. Barrera "unilaterally modified" the services she provide E.C. by delivering his services in twenty minute increments. The Hearing Officer supported this "unilateral modification" by claiming that E.C. suffered no harm. Oddly enough the Defendant nor the Hearing Officer supported this position with statutes or case law. However, in re *Indianapolis Public Schools*, the State Educational Agency determined that an Indiana school district failed to properly implement the IEP of a 13 year-old student, when the speech and language therapist unilaterally adjusted the amount, duration and frequency of speech and language services included in the student's IEP." See *Indianapolis Public Schools*, 42 IDELR 20, (Indiana State Educational Agency, August 12, 2004). In that case it was determined that while a "district's fail[ure] to implement an IEP 'exactly' as written, [was] not necessarily [a] violation of the IDEA. . . ." substantial modifications require a team meeting. *Id*. Therefore, when Ms. Barrera admitted that she modified E.C.'s speech and language hours because he purportedly tired after 20 minutes[1] into the session, that amounted to a substantial modification of his IEP thereby requiring a meeting of a MDT to consider the effect that the unilateral modification would have or had on E.C.'s. Thus, if the IEP is the "primary vehicle" and "centerpiece of the statute education delivery system(See *Diatta v. District of Columbia*, 319 F. Supp.2d. 57, at 63 (D.D.C. 2004) citing with approval *Honig v. John Doe,* 484 U.S. 305. at 311), Ms. Barrera is incapable of "unilaterally modifying" E.C.'s IEP and this Court must reverse the August 2005 HOD.

---

[1] Even though the encounter tracking forms only documented December 9, 2004 as a day that student was unable to participate. Her testimony and the February 2005 Progress report are the only instances regarding E.C.'s fatigue.

## B. THE EVIDENCE OF RECORD DEMONSTRATES THAT E.C.'S PROGRESS WAS TRIVIAL AT BEST

The Defendant argues that because Ms. Barrera testified that E.C. had made "great progress", her testimony should be accepted as proof that E.C. had not been denied access to FAPE. *See AR at 130*. The Hearing Officer reliance on the February 2005 Progress report to support his conclusion that E.C. gained educational benefit during the 2004-2005 school year, was wrong. *See A. R at 4, 84.* The IDEIA is clear that the educational programs designed for a child unique and specific needs must be more than "de minimis". Aside from the subjective testimony of the speech language therapist and the parent, the record is absolutely devoid of any objective evidence, including the encounter tracking forms, December 2004 and June 2005 speech language evaluations and the June 2004 IEP, that E.C. made the "great progress" to which Ms. Barrera ascribed to him. When the February 2005 and June 2005 progress reports are read in conjunction with the December 2004 and June 2005 evaluations, one wonders whether she is describing E.C. or another one of her students. It appears that in the progress reports she conveys the impression that E.C. is making progress, yet, the evaluations demonstrate the he has not made any measurable progress beyond November 2004.

Notwithstanding, the fact that the June 2004 IEP identified ten goals that were to address E.C.'s *unique* needs, Ms. Barrera only addressed six of those objectives between November 2004 through June 2005. *See Plaintiff's Supplemental Statement of Material Facts #3 and 11; see AR at 49-51; 85-104.* The Hearing Officer, utilizing the tracking forms as the basis, concluded that E.C. received his language and speech therapy on a consistent basis. However, even a cursory perusal of the tracking forms document that E.C. received the full complement of services, i.e., a full 135 minutes per week, **only** eight weeks out of a total of twenty-three (23) weeks, excluding the time

5

E.C. was hospitalized during the month of April 2005. Although E.C. received speech and language therapy during the remaining fifteen (15) weeks, the tracking forms the Hearing Officer relied upon to conclude that the services were delivered on a consistent basis, unequivocally and undisputably document that the E.C. received less than the full complement of services he should have received during those weeks. Ms. Barrera, who worked at Tubman Elementary School only on Tuesdays and Thursdays between the hours of 9:00a.m and 12:00p.m. had only limited availability to E.C. and she missed a total of ten sessions between November 2004 and June 2005, excluding snow days and school holidays. The record does not indicate that she made up the ten sessions she missed or otherwise was able to compensate E.C. for those services. Furthermore, the speech and language evaluations that she completed in December 2004 and June 2005 noted E.C.'s "severely delayed speech and language skills." *A.R. at 74-80.* The December 2004 Speech and Language evaluation noted that while E.C. could identify body parts, recognize actions in picture, follow two-step commands, he had difficulty understanding pronouns, part-whole relationships, simple descriptive concepts and the concept of "more". *AR. at 79.* He also "had difficulty combining 3-4 words in spontaneous speech, using various word combinations, using more than verbs, difficulty answering 'what' and 'where' questions and using possessive forms." *AR. at 79.* The June 2005 speech and language evaluation indicated that E.C. had difficulties with single word concepts like belt, cow, bear, skunk, crab and pear. *AR. at 76*. It further indicated the E.C. could not correctly label pictures that portrayed words like cat, bird, bus, duck and train. *Id*. With regard to articulation substitutions, E.C. could only produce five (5) out of forty-seven (47) words. *Id.* Despite the many difficulties that E.C. continued to have, the record does not indicate that Ms. Barrera ever disclosed or otherwise

6

shared that information with the MDT team. And it is rather unfortunate for E.C. that she never addressed these problems in therapy. *A.R. at 49-51; 75-79;81-84; 85-104.*

In fact, the "great progress" Ms. Barrera alludes to in her testimony is contradicted by her own encounter tracking forms and progress reports. For instance, in the November 4, 2004, meeting between she and E.C., she noted that E.C. could communicate in two word utterances. However, in the February 2005 progress report card, she states that he had an emerging break through in this area and in June 2005 managed to achieve this goal. *See AR at 81, 83*. One can only reasonably conclude that little or no actual progress had been truly made since E.C. was speaking in two word utterances, at least as early as November 4, 2004, the point at which Ms. Barrera commenced providing speech and language therapy to him. Secondly, during her testimony, Ms. Barrera testified that E.C. could speak three to four word utterances. However, a close examination of the encounter tracking forms, completed by Ms. Barrera, do not contain any indication or otherwise note that E.C was able to speak three or four word utterances (or that this goal was ever introduced), much less addressed in the IEP. Therefore, in conjunction with the highly questionable references she makes concerning E.C. having a continuous problem with fatigue, Ms. Barrera's credibility is suspect as it is abundantly clear that the only reason E.C. did not receive the full weekly complement of services to which he is entitled had more to do with Ms. Barrera's personal work schedule and rather than anything else. Reiterating that, under *Rowley, supra.,* the June 24, 2004 IEP was reasonably calculated to provide E.C. with educational benefit; however, it was not implemented as it was designed to be.

## CONCLUSION

Therefore, upon the above stated argument, Plaintiffs respectfully request that this Court find that record preponderates in their favor and that the hearing office erred as a matter when he held that the unilateral modification of the therapy session specified IEP did not constitute a denial or deprivation of fape as defined under the IDEA, grant Motion for Summary in favor of the Plaintiffs, reverse the Hearing Officer's determination of August 1, 2005, enter judgment against the Defendant, and award Plaintiffs reasonable attorneys fees and costs incurred in this matter.

                 Respectfully Submitted,

                 _____/s/_____
                 Tilman L. Gerald, Bar No. 28796
                 James E. Brown &Associates, PLLC
                 1220 L Street, N.W., Suite 700
                 Washington, D.C. 20005
                 (202)742-2000
                 ***Attorney for Plaintiffs***