UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALABERTO CATALAN et al., Parents and next friends of E.C., a minor,     Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA, et al., <br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) )    Case Number 05-1733 (HHK) |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT**

Come now defendants District of Columbia and Clifford Janey, by and through counsel, and reply to plaintiffs' Opposition to defendants' Cross Motion for Summary Judgment as follows:

This action seeks review of an administrative decision by a Hearing Officer ("HO"), issued on August 1, 2005, following a hearing conducted pursuant to the Individuals With Disabilities Education Improvement Act, 20 U.S.C. § 1400 *et seq*. ("IDEIA"), on June 20, 2005. In his decision the HO concluded that DCPS had not denied the six year old student a free appropriate public education ("FAPE") when a speech and language therapist provided the student with speech and language therapy in three sessions twice a week instead of three sessions during three days a week.

Plaintiffs here assert that the HO erred because the speech and language therapist "unilaterally deviated" from the student's IEP without an MDT meeting, and because the student only made "trivial" progress as a result of the deviation. (Plaintiffs' Opp. at 2) In

support of their position plaintiffs reference *Indianapolis Public Schools*, 42 IDELR 20, (August 12, 2004). However, that case bears little similarity to the case at hand.

In *Indianapolis,* the issue before the Hearing Officer was whether "the multiplicity of procedural inadequacies, including the violation of some Parental due process rights, result[ed] in substantially limiting the Student's opportunity to receive benefit from [his] IEP." *Indianapolis* at 88. There, the Hearing Officer determined that they did, basing his decision on some of the following factors: the student's 2003-2004 school year IEP called for the provision of Speech-Language services and contained "[s]pecific data regarding [] frequency and duration…." *Indianapolis* at 83; on August 26, 2003, the Speech Therapist reported to the parents that she had not developed a schedule of services for the Student as she was "swamped," *Indianapolis* at 84; during the school year the therapist provided no more than fifty sessions, because she "was unavailable due to the high number of her current caseload," *Indianapolis* at 80; the Speech-Language therapist did not provide the student with 1:1 services, as required in his IEP, despite the fact that one of her notes to the Parents contained a notation identifying such a service as being provided; *Indianapolis* at 84; while the Student's IEP required daily activity reports from the speech therapist, the therapist only provided weekly reports and her records failed to document on a consistent basis either the frequency, duration or content of the speech therapy services she was providing. *Indianapolis* at 84. Most significant in Indianapolis, was the fact that "[t]he Student suffered regression in the area of expressive language during the 2003-2004 School-year…. [T]he inadequacies and violations did accrue to the extent that the Student's

2

opportunity to benefit from the IEP provided was seriously impaired resulting in a significant deprivation of educational benefits. " *Indianapolis* at 86.

None of these circumstances is present here. There is no evidence that the student regressed, or failed to gain educational benefit because the speech therapist provided the student with therapy on two, rather than three days a week, or because she was unavailable for some of his sessions. On the contrary, the record shows that in her Final Progress Report, Claudina Barrerra, the student's speech and language pathologist, stated that the student was either making progress or had successfully completed the majority of the components of his IEP goals. (R. at 81-82, 85-104) Further, Ms. Barrerra testified that the student had made great progress during the school year. (R. at 130) Additionally, the student's mother testified that her son had "gotten better" in his speech and language skills. (R. at 151-152) While plaintiffs claim that both <u>the parent's</u> and the therapist's testimony are to be discounted as self serving, and that the "Hearing Officer's reliance on the February 2005 Progress report to support his conclusion that E.C. gained educational benefit during the 2004-2005 school year, was wrong," plaintiffs have not established this to be the case. (Opposition at 5)

Plaintiffs opine that the student has not made progress because both a December 2004 Evaluation and a June 2005 Re-Evaluation indicate that the student has "severely delayed speech and language skills." (R. at 80 and 77)  However, plaintiffs fail to take into account that the June 2005, Re-Evaluation is not a true "evaluation." "Formal speech and language test results have a validity of three years. Therefore, formal test results from the 12/17/04 administration will be incorporated to the current evaluation." (R. at 75) Thus, much of what is outlined in the Re-Evaluation is a reiteration of the earlier

Evaluation. Additionally, it is difficult to imagine that anyone would believe that a child who has multiple disabilities, who was absent from school for approximately 6 weeks, who at age 3 had receptive and expressive language skills at approximately the 8-9 month range, and who at age 5 had receptive and expressive language skills at the 2.0-2.5 age-range, would not still be diagnosed as having delayed speech and language skills after a year of speech-language therapy, regardless of the fact that he made improvement during the school year. (R. at 70, 79)

Any procedural violation that DCPS may have committed by providing the student speech-language therapy on two rather than three days a week does not constitute a "substantial modification" of the student's IEP so as to deprive the student of educational benefit. "[T]he designation of an IEP as a 'plan' and not a 'contract' evinced congressional intent to allow districts some flexibility when implementing an IEP. Thus, if a district failed to implement an IEP 'exactly' as written, it was not necessarily a violation of the IDEA." *Indianapolis* at 80.

Further, to recover under IDEA for violation of a procedural provision, a plaintiff "must show harm to [the student] as a result of the alleged procedural violations." Weiss v. School Bd. of Hillsborough County, 141 F.3d 990, 996 (11th Cir. 1998). See Board of Educ. of Montgomery County v. Brett Y., 1998 U.S.App.LEXIS 13702, * 36 (4th Cir. 1998)("To support a finding that a student has not been provided with a FAPE, procedural violations must be serious and cause the student to lose educational opportunity"); Board of Educ. of Arlington Heights School Dist. No. 25 v. Illinois State Bd. of Educ., 2001 U.S.Dist.LEXIS 6994 (N.D.Ill. 2001)(defendant not entitled to compensatory education where imperfect procedural implementation of IEP process did

4

not deny defendant FAPE); <u>Barber v. Bogalusa City School Board</u>, 2001 U.S.Dist.LEXIS 8156, *14 (E.D.La. June 12, 2001)("Defendants complied adequately, though not perfectly, with the IDEA's requirement [of including certain specifications in an IEP] and [ ] any procedural inadequacies that might have existed did not result in the loss of educational opportunity," citing <u>Buser v. Corpus Christi Indep. Sch.</u>, 51 F.3d 490, 493 (5th Cir. 1995); <u>Board of Educ. of the Hedrick Hudson Central Sch. Dist. v. Rowley</u>, 458 U.S. 176, 206 (1982); <u>W.G. v. Board of Trustees of Target Range</u>, 960 F.2d 14579, 1484 (9th Cir. 1992); <u>Burke County Bd. of Educ. v. Denton</u>, <u>supra</u>, 895 F.2d at 982); <u>Miles S. v. Montgomery County Bd. of Educ.</u>, 824 F.Supp. 1549 (M.D.Ala. 1993); <u>White v. School Bd. of Henrico County</u>, 549 S.E.2d 16 (Va.Ct.App. 2001).

Here, the evidence in the record supports the HO's conclusion that the student received consistent services throughout the school year and progressed as a result of them. The student received "personalized instruction[ ] provided with sufficient supportive services to permit [him] to benefit from the instruction….the child [] receiv[ed] a 'free appropriate public education' as defined by the Act." *Rowley* at 189.

> Respectfully submitted,
>
> ROBERT J. SPAGNOLETTI,
> Attorney General for the District of Columbia
>
> GEORGE VALENTINE
> Deputy Attorney General
> Civil Litigation Division
>
> EDWARD P. TAPTICH [012914]
> Chief, Equity Section 2

5

        /s Maria Merkowitz  
MARIA MERKOWITZ, [312967]  
Assistant Attorney General  
Equity Division  
441 4th Street, N.W., 6S  
Washington, D.C. 20001  
(202) 442-9842  
Email – maria.merkowitz@dc.gov

August 30, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ALBERTO CATALAN et al., Parents and next friends of E.C., a minor, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case Number 05-1733 (HHK) |
| DISTRICT OF COLUMBIA, et al., | ) | |
| Defendants. | ) | |

**DEFENDANTS' SUPPLEMENTAL STATEMENT OF MATERIAL FACTS WHICH ARE IN DISPUTE**

Plaintiffs have included in their Opposition to defendants' Cross Motion for Summary Judgment a Supplemental Statement of Material Facts as to Which There is No Dispute. The Court's Rules do not provide for such a supplemental document, and as such, this Court should not accept it. However, in the event that plaintiffs' submission is permitted, defendants attach herewith their Supplemental Statement of Material Facts Which Are in Dispute and their Supplemental Statement of Material Facts as to Which There is No Dispute.

1. Defendants dispute plaintiffs' material allegation numbered 8. At the June 20, 2005, hearing, Ms. Barrerra, the speech-language therapist, testified that the student could speak in three or four word sentences, for example, "I want some water." When the student began speech-language therapy with Ms. Barrerra he would mostly use one word, maybe two. For example instead of saying "I want water," he would say "water." (R. at 130-131)

7

2. Defendants dispute plaintiffs' material allegation numbered 10.  January 9, 2005, was a Sunday and Ms. Barrerra was not scheduled to provide services.  March 1, 2005, was a snow day.  (R. at 96)

3. Defendants dispute plaintiffs' material allegation numbered 11.  The goal of diminishing echolalic behavior was addressed on February 3, 2005, in the Encounter Tracking Form.  Further, the goals enumerated by plaintiffs were addressed in the student's Final Progress Report dated June, 2005, and his Bilingual Speech and Language Re-Evaluation, performed in June 2005.  These reports indicate that the student was making progress diminishing echolalic behavior (R. at 82), that his voice quality, pitch and intensity appeared to be within normal limits for his age and gender (R. at 76); that his rate, rhythm and forward flow of speech were within normal limits for his age and gender (R. at 76); and his articulation, voice and fluency were found to be within normal limits for his age and gender.  (R. at 77)

Respectfully submitted,

ROBERT J. SPAGNOLETTI,
Attorney General for the District of Columbia

GEORGE VALENTINE
Deputy Attorney General
Civil Litigation Division

EDWARD P. TAPTICH [012914]
Chief, Equity Section 2

  /s Maria Merkowitz
MARIA MERKOWITZ, [312967]
Assistant Attorney General
Equity Division
441 4th Street, N.W., 6S

            Washington, D.C. 20001  
            (202) 442-9842  
            Email – maria.merkowitz@dc.gov

August 30, 2006

9

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALABERTO CATALAN et al., Parents and next friends of E.C., a minor, <br>    Plaintiffs, <br><br>    v. <br><br>DISTRICT OF COLUMBIA, et al., <br><br>    Defendants. | ) <br> ) <br> ) <br> )     Case Number 05-1733 (HHK) <br> ) <br> ) |

**DEFENDANTS' SUPPLEMENTAL STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO DISPUTE**

    1.    Ms. Barrera, the speech-language pathologist was present and available to provide the student with speech and language therapy on the following dates: November 4, 2004, November 9, 2004 (student was absent),[1] November 16, 2004, November 18, 2004, November 23, 2004,[2] November 30, 2004, December 2, 2004, December 7, 2004, December 9, 2004, December 17, 2004, January 13, 2005, January 18, 2005, January 20, 2005, January 25, 2005, January 27, 2005, February 1, 2005, February 3, 2005, February 8, 2005, February 10, 2005, February 15, 2005, February 17, 2005,[3] March 3, 2005, March 8, 2005, March 10, 2005, March 15, 2005, March 17- March 22, 2005 (student was absent), April 5 - April 28, (student was absent), May 5, 2005, May 17, 2005, May 19, 2005, May 24, 2005, May 26, 2005, May 31, 2005 (student was absent), June 7, 2005, June 9, 2005, June 14, 2005, and June 16, 2005. (R. at 85-104)

---

[1] November 11, 2004 school was closed for Veteran's Day.
[2] November 25, 2004, school was closed for Thanksgiving.
[3] February 24 and March 1, 2005, were snow days).

10

        Respectfully submitted,

        ROBERT J. SPAGNOLETTI,
        Attorney General for the District of
        Columbia

        GEORGE VALENTINE
        Deputy Attorney General
        Civil Litigation Division

        EDWARD P. TAPTICH [012914]
        Chief, Equity Section 2


        _/s Maria Merkowitz
        MARIA MERKOWITZ, [312967]
        Assistant Attorney General
        Equity Division
        441 4th Street, N.W., 6S
        Washington, D.C. 20001
        (202) 442-9842
        Email – maria.merkowitz@dc.gov

August 30, 2006